UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARKADIUSZ PIOTROWICZ,

                              Plaintiff,

                    -v.-

TECHTRONIC INDUSTRIES NORTH AMERICA,
INC., ONE WORLD TECHNOLOGIES, INC., RYOBI
TECHNOLOGIES, INC., HOME DEPOT U.S.A., INC.,
P&F BROTHER INDUSTRIAL CORP., and NINGBO
DALTON MACHINERY INDUSTRIAL COMPANY,
LTD.,

                              Defendants.

19 Civ. 11522 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Arkadiusz Piotrowicz ("Plaintiff") brings this action under the

Court's diversity jurisdiction, 28 U.S.C. § 1332(a), seeking monetary damages

against Techtronic Industries North America, Inc. ("Techtronic"), One World

Technologies, Inc. ("One World"), Ryobi Technologies, Inc. ("Ryobi," and with

Techtronic and One World, the "Ryobi Defendants"), Home Depot U.S.A., Inc.

("Home Depot"), P&F Brother Industrial Corp. ("P&F"), and Ningbo Dalton

Machinery Industrial Company, Ltd. ("Dalton") (all collectively, "Defendants")

for strict products liability, negligence, and breach of warranty, related to an

injury Plaintiff sustained using a Ryobi-brand miter saw.  Now pending before

the Court is P&F's motion to dismiss for lack of personal jurisdiction.  (Dkt.

#82-84).[1]

---

[1]     The operative pleading in this matter is Plaintiff's Fourth Amended Complaint ("FAC").
        (Dkt. #98).  However, the parties stipulated that Defendants' responses to Plaintiff's
        Third Amended Complaint ("TAC") would be deemed to respond as well to the FAC.

In opposition to the motion to dismiss, Plaintiff argues that he has established at least a *prima facie* case for this Court's exercise of personal jurisdiction over P&F and that he is entitled to jurisdictional discovery before the Court reaches the merits of P&F's motion. For the reasons set forth below, the Court agrees with Plaintiff that his pleadings raise legitimate questions regarding whether P&F was involved in the manufacture of the allegedly defective product and knowingly distributed it through an international stream of commerce that reached New York, such that Plaintiff is entitled to jurisdictional discovery. Therefore, the Court denies P&F's motion to dismiss without prejudice to its renewal following completion of limited jurisdictional discovery.

## BACKGROUND[2]

Given the limited scope of P&F's present motion to dismiss, the Court discusses only those facts that are relevant to resolving the specific issue presented regarding personal jurisdiction over P&F.

---

(Dkt. #105). Thus, the Court considers in this Order Defendant P&F Brother's Motion to Dismiss the TAC (Dkt. #82-84) and the response and reply thereto.

[2]   The facts in this Opinion are drawn primarily from the FAC, as well as the Answer to the TAC filed by the Ryobi Defendants and Home Depot ("Ryobi Answer" (Dkt. #81)), the Declaration of Carol Huang in Support of P&F Brother's Motion to Dismiss the Third Amended Complaint ("Huang Decl." (Dkt. #83-2, Ex. B)) and the exhibits appended to the Affirmation of Jesse M. Minc in Opposition to the Motion to Dismiss ("Minc Aff." (Dkt. #86)).

For ease of reference, the Court refers to Defendant P&F's Memorandum of Law in Support of Its Motion to Dismiss as "P&F Br." (Dkt. #84); Plaintiff's Memorandum of Law in Opposition to P&F's Motion to Dismiss as "Pl. Opp." (Dkt. #87); and P&F's Reply Memorandum of Law as "P&F Reply" (Dkt. #90).

**A.    Factual Background**

**1.    Plaintiff**

Plaintiff Arkadiusz Piotrowicz currently resides in Brooklyn, New York. (FAC ¶ 1).  At the time of his injury, on or about August 21, 2018 (the "Accident Date"), he lived in New Paltz, New York.  (*Id.* at ¶ 36).  Plaintiff previously worked as a self-employed carpenter.  (*Id.*).  At some point before the incident at issue, Plaintiff purchased a Ryobi-brand compound miter saw (the "Saw") from a Home Depot store located in New York City.  (*Id.* at ¶ 25). Plaintiff's Saw had the model number TS1552/TS1552DXL and the serial number Z072344537.  (*Id.* at ¶ 37).

On the Accident Date, Plaintiff was using the Saw to cut a wood board. (FAC ¶ 38).  Plaintiff was operating the Saw with his right hand and stabilizing the board with his left hand.  (*Id.*).  During operation of the Saw, the exposed saw blade came into contact with Plaintiff's left wrist and fully severed his hand above the wrist (the "Accident").  (*Id.* at ¶ 36).  Plaintiff's hand was surgically reattached, but Plaintiff continues to suffer from serious complications, including infections, scar tissue buildup, immobility, and pain, and undergoes various forms of therapy and treatment to address these conditions.  (*Id.*).

**2.    P&F Brother**

Defendant P&F Brother is a Taiwanese corporation that maintains its principal place of business and corporate headquarters in Taichung, Taiwan. (FAC ¶ 14).  P&F is a designer, manufacturer, distributor, and seller of tools, power tools, and other electrical equipment, and/or of individual components

of such products. (*Id.* at ¶ 15). As alleged, P&F designed, made, manufactured, distributed, and/or sold products for, through, on behalf of, and pursuant to an agreement with the Ryobi Defendants and Dalton, through physical and/or online retail sales operations owned, operated, controlled, maintained, and or/managed by Home Depot within the State of New York. (*Id.*). Plaintiff further alleges that P&F manufactures goods for use by members of the public in New York, supplying and distributing the goods to third parties for sale to the public in New York, with knowledge and intent that such goods will be purchased and used by residents of New York. (*Id.* at ¶ 16). Specifically, P&F allegedly designs, manufactures, distributes, sells, and/or places Ryobi-brand miter saws like Plaintiff's Saw into the stream of commerce for distribution and sale by third parties to the public. (*Id.* at ¶ 17).

**B.    Procedural Background**

Plaintiff filed the original complaint in this matter on October 23, 2019, in the United States District Court for the Eastern District of New York (Dkt. #1), from which district the case was transferred on December 17, 2019 (Dkt. #24). At the time of transfer, the operative pleading was Plaintiff's First Amended Complaint. (Dkt. #16). This Court held an initial pretrial conference on April 7, 2020, during which it granted Plaintiff leave to file a Second Amended Complaint. (*See* Minute Entry for April 7, 2020). Plaintiff filed his Second Amended Complaint on April 13, 2020, adding P&F as a Defendant for the first time. (Dkt. #47).

On July 8, 2020, P&F filed a letter motion requesting a conference regarding its anticipated motion to dismiss the Second Amended Complaint as against P&F for lack of personal jurisdiction. (Dkt. #64). The parties subsequently engaged in discussions regarding the possible substitution of Dalton for P&F, but were unable to reach an agreement. (*See* Dkt. #67-70). On August 6, 2020, the Court entered a stipulation granting Plaintiff leave to file a TAC and set a schedule for briefing P&F's anticipated motion to dismiss. (Dkt. #73).

Plaintiff filed his TAC on August 12, 2020, adding Dalton as a Defendant. (Dkt. #74). On August 20, 2020, the Court denied Plaintiff's request to serve Dalton through P&F's counsel. (*See* Dkt. #80). The record contains no indication that Plaintiff has effectuated service on Dalton to date. P&F filed its motion to dismiss the TAC and supporting papers on September 1, 2020 (Dkt. #82-84); Plaintiff filed his opposition on September 17, 2020 (Dkt. #86-87); and P&F filed its reply on September 30, 2020 (Dkt. #90). The Ryobi Defendants and Home Depot took no position on the motion. (*See* Dkt. #85).

Plaintiff filed the FAC on November 12, 2020, making only non-substantive modifications. (Dkt. #98). The parties subsequently stipulated that all responses to Plaintiff's TAC, including P&F's motion to dismiss, would be deemed to respond to Plaintiff's FAC as well. (*See* Dkt. #103). The motion is thus ripe for the Court's consideration.

**DISCUSSION**

**A. Applicable Law**

**1. Motions to Dismiss Under Rule 12(b)(2)**

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (citing *Metro. Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). "Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Id.*; *see also Dorchester Fin. Secs., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (explaining that at the preliminary stage before discovery, "'the plaintiff's *prima facie* showing may be established solely by allegations'" (quoting *Ball* v. *Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990))). In considering a Rule 12(b)(2) motion, the pleadings and affidavits are to be construed in the light most favorable to plaintiff as the non-moving party, and all doubts are to be resolved in plaintiff's favor. *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001); *see also In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 206 ("We credit a plaintiff's averments of jurisdictional facts as true."). "However, the Court need not draw argumentative inferences in the plaintiff's favor, nor accept as true a legal conclusion couched as a factual allegation." *Leon* v. *Shmukler*, 992 F. Supp. 2d 179, 186 (E.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)).

"District courts have considerable discretion in determining how best to handle jurisdictional questions," *Best Van Lines, Inc.* v. *Walker*, No. 03 Civ. 6585 (GEL), 2004 WL 964009, at *1 (S.D.N.Y. May 5, 2004), and may permit a plaintiff to conduct "limited discovery with respect to the jurisdictional issue[,]" *Filus* v. *Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir. 1990); *see also APWU* v. *Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (cautioning that "a court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction" (internal quotation marks omitted) (quoting *Phoenix Consulting, Inc.* v. *Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000))). "It is well settled under Second Circuit law that, even where a plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon*, 992 F. Supp. 2d at 194 (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 208; *APWU*, 343 F.3d at 627; *Koehler* v. *Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996)). Such discovery may be authorized where the plaintiff has alleged facts that support a colorable claim of jurisdiction. *Id.* at 195; *see also Ayyash* v. *Bank Al-Madina*, No. 04 Civ. 9201 (GEL), 2006 WL 587342, at *5 (S.D.N.Y. Mar. 9, 2006); *Manhattan Life Ins. Co.* v. *A.J. Stratton Syndicate (No. 782)*, 731 F. Supp. 587, 593 (S.D.N.Y. 1990) ("While a court should not approve a fishing expedition when little more exists than plaintiff's bare assertions that jurisdiction is proper, under New York law plaintiffs are entitled to discovery regarding the issue of personal

jurisdiction if they have made a sufficient start, and shown their position not to be frivolous." (internal quotation marks omitted)).

## 2. Long-Arm Jurisdiction Under CPLR § 302(a)(3)

It is "well-established that 'the amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits[.]'" *Kernan* v. *Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999) (quoting *Arrowsmith* v. *United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963)). Thus, the Court applies New York law regarding personal jurisdiction. As relevant here, New York's long-arm statute, Civil Practice Law and Rules ("CPLR") § 302(a), provides that New York courts may exercise personal jurisdiction over a non-domiciliary tortfeasor if it or its agent commits a tortious act outside of New York that injures someone in New York and either: (i) the tortfeasor regularly does or solicits business, or engages in another persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in New York; or (ii) the tortfeasor expects (or should reasonably expect) the act to have consequences in New York and derives substantial revenue from interstate or international commerce. CPLR § 302(a)(3).

## 3. Constitutional Due Process

If the requirements of CPLR § 302(a)(3) are satisfied, the Court must also determine whether exercising personal jurisdiction over P&F would comport with constitutional due process. To do so, the Court assesses whether P&F maintained "minimum contacts" with New York, and whether an exercise of

8

personal jurisdiction "comports with traditional notions of fair play and substantial justice — that is, whether it is reasonable under the circumstances of this case." *Kernan*, 175 F.3d at 244 (internal quotation marks omitted) (quoting *Robertson-Ceco Corp.*, 84 F.3d at 568). This inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Waldman* v. *Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (quoting *Walden* v. *Fiore*, 571 U.S. 277, 284 (2014)). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden*, 571 U.S. at 286 (quoting *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 475 (1985)). Plaintiff bears the initial burden to show that P&F had the required minimum contacts with New York; however, if this showing is made, the burden shifts to P&F to demonstrate why an exercise of personal jurisdiction would not be reasonable. *See State Farm Fire & Cas. Co.* v. *Swizz Style, Inc.*, 246 F. Supp. 3d 880, 892-93 (S.D.N.Y. 2017) (citing *Burger King Corp.*, 471 U.S. at 477).

**B.    Analysis**

P&F argues that this Court lacks personal jurisdiction over P&F — both because New York's long-arm statute does not reach P&F and because the exercise of personal jurisdiction over P&F would not accord with constitutional due process. (*See* P&F Br. 5-11; P&F Reply 3-7). In support of its position, P&F provides a declaration from P&F's Sales Manager Carol Huang, which declaration states that P&F:

- is a Taiwanese manufacturing company organized and existing under the laws of Taiwan and headquartered in Taiwan;

- is not registered to do business in New York;

- does not transact business or have an office, bank account, or employees in New York;

- does not solicit business in New York;

- does not sell or ship products directly to purchasers in New York;

- did not enter into any contracts in New York with co-Defendant Techtronic Industries or enter into any contracts to deliver Ryobi-brand saws to Techtronic in New York; and

- has no knowledge as to the amount or value of products that it manufactures, if and when they may be sold in New York.

(P&F Br. 3-4; Huang Decl. ¶¶ 2-4, 13-23).

Plaintiff responds that CPLR § 302(a)(3) provides the statutory basis for this Court's exercise of personal jurisdiction over P&F, based on P&F's commercial relationship with the Ryobi Defendants and its participation in a substantial stream of international commerce, through which the Saw was allegedly designed, manufactured, distributed, and ultimately sold to Plaintiff in New York by Home Depot. (Pl. Opp. 10-15). Plaintiff further contends that due process is satisfied in this case because P&F knowingly participated in a chain of commercial manufacturing and distribution that resulted in the sale of tens of thousands of saws in the United States in the year of the Saw's manufacture, with some subset of those sales occurring in New York. (*Id.* at 15-19).

As relevant here, Plaintiff's FAC alleges that: (i) products or components of products designed, manufactured, distributed, or sold by P&F, through or on behalf of and pursuant to an agreement with the Ryobi Defendants and Dalton, were ultimately sold to consumers in New York; (ii) P&F manufactures products for use by members of the public in New York, and supplies and distributes said products to third parties, including the Ryobi Defendants, Dalton, and/or Home Depot, for sale to the public in New York, with the knowledge and intent that such items will be purchased and used by residents of New York; and (iii) P&F designs, manufactures, distributes, sells, and/or places into the stream of commerce for distribution and sale to the public, including to New York residents, by third parties — including the Ryobi Defendants, Dalton, and Home Depot — products under the Ryobi brand name, including but not limited to Ryobi compound miter saws like Plaintiff's Saw.  (FAC ¶¶ 15-17). With respect to each allegation, Plaintiff asserts that "a reasonable opportunity for discovery will elucidate further facts which will demonstrate that these allegations are substantially true and accurate."  (*Id.*).

Based on these allegations, Plaintiff contends that P&F "was clearly involved in a substantial stream of international commerce, and should have expected the production of a defective miter saw to have consequences in New York State." (Pl. Opp. 11).  As additional support, Plaintiff relies on responses in the Answer to the Third Amended Complaint and Rule 26 disclosures provided by the Ryobi Defendants and Home Depot, which responses indicate that Plaintiff's Saw was manufactured in 2007 by P&F at a plant in Taiwan (*see*

11

Minc Aff., Ex. 1, ¶ 10(a)), and that, through a chain of distribution connecting P&F, Dalton, and the Ryobi Defendants, Home Depot sold over 41,000 units of the subject saw model in 2007 in the United States (Pl. Opp. 13; *see also* Minc Aff., Ex. 3).

Although Plaintiff has alleged that a distribution agreement existed between and among Defendants, through which agreement P&F and/or Dalton manufactured the allegedly defective model of miter saw and supplied it to their co-defendants, the Ryobi Defendants and Home Depot have been unable to locate a copy of the agreement to date. (*See* Minc Aff., Ex. 2, ¶ 1; *see also* Ryobi Answer ¶ 24 (denying Plaintiff's allegations about the relationships between and among Defendants pending further investigation into the respective roles of P&F and Dalton and the existence of the alleged distribution agreement)). As a result, Plaintiff believes discovery is warranted to: (i) verify whether such an agreement exists; (ii) determine whether P&F possesses a copy of the agreement; and (iii) identify the terms of the agreement, in order to clarify P&F's role in the manufacture and distribution of Plaintiff's Saw.

Plaintiff additionally argues that there are questions as to whether Dalton — which, to reiterate, has not yet been served — is the agent or alter ego of P&F for jurisdictional purposes. (Pl. Opp. 14-15). Specifically, Plaintiff highlights that Huang's declaration indicates that P&F formed a joint venture with Techtronic's parent company to create and jointly own a holding company named Precision Technology Industries, Ltd., which in turn wholly owns Dalton. (*Id.* at 17; *see also* Huang Decl. ¶¶ 5-10). The lack of clarity about the

relationship between P&F and Dalton was such that a product safety review performed by the Ryobi Defendants indicated that the saw model at issue was to be manufactured "by P&F @ Dalton factory." (Minc Aff., Ex. 4). Plaintiff contends that, even accepting P&F's claims that Dalton rather than P&F assembled the Saw and that P&F and Dalton are separate corporate entities (*see* Huang Decl. ¶¶ 10-12), if Dalton manufactured and distributed Ryobi-brand saws including Plaintiff's as P&F's agent, then the Court still may exercise personal jurisdiction over P&F based on Dalton's business activities in or reaching New York. (Pl. Opp. 17). *See, e.g., Yousef* v. *Al Jazeera Media Network*, No. 16 Civ. 6416 (CM), 2018 WL 1665239, at *9 (S.D.N.Y. Mar. 22, 2018) ("Where the parent is not involved in the day-to-day operations of its subsidiary, or, where the entities observe corporate formalities, the subsidiary and parent can nonetheless have an agency relationship because they are engaged in a 'common business enterprise.'" (quoting *Dorfman* v. *Marriott Int'l Hotels, Inc.*, No. 99 Civ. 10496 (CSH), 2002 WL 14363, at *10 (S.D.N.Y. Jan. 3, 2002))). Plaintiff seeks jurisdictional discovery on this issue as well. (Pl. Opp. 17).

The Court concludes that Plaintiff's allegations regarding P&F's role in the design, manufacture, and distribution of the Saw itself or components thereof, and P&F's knowledge that it was participating in and receiving substantial revenue from a stream of commerce that reached New York customers, are adequate at this stage to suggest a basis for this Court's exercise of personal jurisdiction over P&F under CPLR § 302(a)(3) and

consistent with due process. Plaintiff's allegations are not fully rebutted by the

Huang Declaration, which leaves open questions regarding, *inter alia*, P&F's

direct role in designing and/or manufacturing components of the Saw; whether

P&F had general knowledge of, and assented to, distribution of its products in

the United States, including the New York market; and P&F's functional

oversight of, or other role in, Dalton's manufacturing operations, such that

Dalton functioned as the agent of P&F. (*See generally* Huang Decl.).

Thus, the Court will exercise its discretion to permit Plaintiff limited

discovery to determine whether:

> i. P&F designed, manufactured, assembled, distributed, or otherwise contributed to the ultimate sale of the Saw;
>
> ii. there was in fact a distribution agreement to which P&F was a party, which agreement put P&F on notice of intended distribution of P&F products — whether components or finalized tools — in the United States; and
>
> iii. the relationship between P&F and Dalton in 2007 was such that Dalton acted as P&F's agent with respect to the manufacture and distribution of Ryobi-brand miter saws like Plaintiff's.

*Accord Blockchain Mining Supply & Servs. Ltd.* v. *Super Crypto Mining, Inc.*,

No. 18 Civ. 11099 (ALC), 2020 WL 7128968, at *1–2 (S.D.N.Y. Dec. 4, 2020)

(granting limited jurisdictional discovery regarding personal jurisdiction and

alter ego theory); *Leon*, 992 F. Supp. 2d at 195 (granting limited discovery as to

grounds for personal jurisdiction); *cf. In re Magnetic Audiotape Antitrust Litig.*,

334 F.3d at 207-08 (concluding that the district court improperly denied

plaintiffs the opportunity to engage in limited jurisdictional discovery); *Ayyash*,

2006 WL 587342, at *6 (permitting limited discovery as to subject matter jurisdiction). Discovery is restricted to those materials necessary "'to verify the allegations of specific facts crucial' to establishing Plaintiff's personal jurisdiction and [agency] theory." *Blockchain Mining*, 2020 WL 7128968, at *2 (quoting *First City, Texas-Houston, N.A.* v. *Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998)).

## CONCLUSION

For the reasons stated above, Defendant P&F's motion to dismiss is DENIED without prejudice to renewal after the completion of limited jurisdictional discovery. It is hereby ORDERED that the parties are directed to confer and, by **May 21, 2021**, submit to the Court a proposed plan for production of those documents minimally necessary to determine whether this Court may assert jurisdiction over P&F in the instant case.

The Clerk of Court is directed to terminate the motion at docket entry 82.

SO ORDERED.

Dated:     April 30, 2021
           New York, New York

_____
          KATHERINE POLK FAILLA
          United States District Judge